**ALLSTATE INSURANCE COMPANY,**
Appellant–Defendant,

v.

**Krista HENNINGS, Appellee–Appellee.**

No. 20A05–0408–CV–425.

Court of Appeals of Indiana.

May 31, 2005.

Mark C. Sherer, Robert B. Herber, Kopka, Pinkus & Dolin, P.C., South Bend, IN, Attorneys for Appellant.

Daniel H. Pfeifer, Douglas E. Sakaguchi, Sweeney, Pfeifer, Morgan & Stesiak, South Bend, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### *STATEMENT OF THE CASE*

Allstate Insurance Company ("Allstate") appeals the judgment entered upon the jury's verdict in favor of Krista Hennings in Hennings' action against Ricardo Flores and Allstate.

We affirm in part, reverse in part, and remand.

### ISSUES

1. Whether the trial court erred in denying Allstate's motion to correct error because the amount of damages awarded was erroneous as a matter of law.

2. Whether the trial court erred in its instruction of the jury.

3. Whether the trial court erred in excluding certain evidence.

### *FACTS*[1]

At about 6:45 a.m. on October 24, 2000, twenty-four-year-old Hennings was on the way to her first-year teaching job at a middle school in Elkhart. As she drove north on Second Street, she slowed for the light at Jackson Boulevard; when she saw it turn green, she looked in both directions and proceeded into the intersection. Flores was driving a pickup truck east on Jackson toward the intersection with Second, and he disregarded the red light. His pickup struck Hennings' vehicle broadside, on the driver-side door, the impact spinning her Toyota Camry. Hennings was transported to the hospital with complaints of head, neck, lower back, and left knee pain; her car was totaled.[2]

Officer Wayne Bias of the Elkhart Police Department responded to the scene

---

1. We direct Allstate's counsel to the Indiana Appellate Rules as follows: the appellant's brief "shall contain" a statement of the case, which describes the nature of the case and includes page references to the record on appeal, and also a statement of facts which not only describes facts relevant to the issues presented for appeal but also provides "page references" to the appellate record or Appendix to support those facts. Ind.App. Rule 46(A).

2. A photograph of the massive damage to the driver-side door was admitted into evidence.

and talked to Flores, Hennings, and two witnesses. Bias recorded Flores' insurer as Illinois National Insurance, as shown by his vehicle registration. Bias concluded that the primary cause of the accident was Flores' "disregarding a signal," with the wet roadway being a "contributing circumstance." (Tr. 29).

Hennings filed a claim for her property damage with her insurance company, Allstate. In January of 2001, pursuant to Allstate's instructions, Hennings sent Allstate the title to her car, and she received a check for its value less $500 for her collision insurance deductible.[3]

On August 8, 2002, Hennings brought an action against Flores. Flores did not appear, and the CCS reflects an order of default judgment as to Flores on September 27, 2002. The CCS also reflects that Hennings' complaint was amended on October 18, 2002, to add Allstate as a defendant; her brief states that the amendment added an uninsured motorist claim.[4]

The matter was tried before a jury on February 24 and March 9, 2004. The trial court informed the jury that Hennings contended Flores "enter[ed] the intersection on a red light" and that "as a direct and proximate result of the negligence of Mr. Flores for failing to yield the right of way and disregarding a traffic signal, she suffered personal injuries," and incurred various damages; that Flores was "an uninsured driver"; and that she was entitled to coverage under an Allstate insurance policy. (Tr. 4, 5). It further explained that Allstate "disputes the issue of causation, contends that this matter is a comparative fault case, and disputes the

nature and severity of the alleged injuries." (Tr. 5).

The jury heard testimony by two eyewitnesses to the accident. Both testified that Flores had run the red light and that Hennings had done nothing to cause or contribute to the accident. The accident report by Officer Bias was entered into evidence.

The jury heard evidence that immediately after the accident, Hennings began to suffer constant headaches and neck pain. It heard details of her treatment with pain medication, various injections, electrical stimulation, and chiropractic manipulations from late 2000 until the time of trial; and that she performed therapeutic exercises "every day." (Tr. 93). Yet 3½ years after the collision, Hennings testified, she continued to suffer "headaches on a daily basis" and was, on some days, unable to work. (Tr. 98). A physician specializing in physical medicine and physical rehabilitation and a chiropractor, both of whom had treated Hennings, testified that her neck and headache problems were a result of the October 24, 2000 collision.

The jury also heard evidence that for several weeks after the accident, Hennings suffered lower back pain. After medication and physical therapy and home exercises, the lower back problem mostly resolved, but Hennings experienced occasional flare-ups.

Finally, the jury heard evidence concerning the injury to Hennings' left knee. Hennings had been a star basketball player in high school and attended college on a basketball scholarship. She had undergone some procedures on her left knee during college, but she had recovered from

3. According to the policy, there is no deductible if the accident is with an uninsured motorist.

4. Allstate has not included the original complaint, the amended complaint, or its answer in its appellate record. Indeed, Allstate's brief does not reference the filing of any legal action by Hennings.

these and was able to continue playing basketball and to participate in various other athletic pursuits without difficulty. Hennings testified that when Flores' truck hit her vehicle, the "door handle on the left-hand side jammed into [her] knee." (Tr. 75).

When the physical therapy and medications initially prescribed did not resolve her left knee discomfort, Hennings consulted Dr. Mark Klassen, her previous orthopedic surgeon. Dr. Klassen's examination in January of 2001 found that her left knee problem was not related to her previous knee problems. Because Dr. Klassen's 1994 surgery on Hennings' knee precluded an MRI,[5] he performed an arthroscopic procedure[6] on February 16, 2001. Dr. Klassen found some damage within the joint, which he attempted to clean up and repair. He referred Hennings for additional physical therapy and last saw her in May of 2001. In a video deposition on February 6, 2004, which was played for the jury, Dr. Klassen testified that it was likely that Hennings would need "a knee replacement at a later age and that will be for a number of reasons," not "just from the motor vehicle accident" but also because she "had a number of other injuries to her knee as well." (Klassen's Depo. at 20). When asked by Allstate whether Hennings would have needed a knee replacement absent the motor vehicle accident and its injuries, Dr. Klassen opined that the likelihood was "much higher than a normal non-injured knee" because of her pre-accident knee problems. *Id.* at 30. Thus, Dr. Klassen agreed that Hennings "absolutely" was a candidate for knee replacement surgery "before this accident occurred." *Id.* at 32. Dr. Klassen testified that he could not predict whether Hennings would need knee replacement surgery. Finally, Dr. Klassen's testimony included his opinion that as a result of the October 24, 2000 accident, Hennings had suffered a 10% impairment of her left lower extremity, "equivalent to a 4 percent [impairment] of a person as a whole," which would "certainly ... affect her life." *Id.* at 34, 36.

Hennings testified to how important sports activities were in her life—her hands-on coaching and the many post-college sports activities in which she had engaged prior to the October 2000 accident. According to Hennings, "all the athletic things [she] did before, even after the 1994 major ACL surgery," she had been unable to do since the accident. (Tr. 88). Although she continued to be committed to a personal exercise program, she described working out "like [she was] forty-five or fifty" years old "instead of like a twenty-eight year old." (Tr. 89). Evidence was introduced that Hennings' medical expenses as a result of the accident had totaled more than $21,000.

Laura Scrine, the adjuster for Allstate handling Hennings' claim, testified that Allstate had a letter dated November 14, 2002, from Illinois National Insurance advising Flores that his coverage had been cancelled on December 16, 1999 for non-payment of premiums.[7] Scrine was aware that Bureau of Motor Vehicles records showed that Flores was convicted on July 31, 2002 of having no insurance at the time

---

**5.** Klassen explained that the metal screws in Hennings' knee would distort the magnetic image of an MRI.

**6.** Arthroscopy involves an "incision in the skin" through which "an inflow catheter" is inserted, allowing use of "a camera and instruments." Klassen Depo. at 29.

**7.** The letter was admitted into evidence.

of the October 24, 2000 accident.[8] Further, Scrine testified that Allstate had sent letters to Flores, to which he had not responded, and had hired a private investigator, who had been unable to find Flores. Nevertheless, according to Scrine, it was up to Hennings, as its insured, "to provide [Allstate] some type of documentation" showing that Flores was uninsured, such as an affidavit by him admitting that fact. (Tr. 71). In her February 24th appearance, Scrine admitted that Allstate had not reimbursed Hennings for the $500 deducted from their payment for her property damage claim, and on March 9th, she again affirmed that Hennings had not been paid the $500.

Between the two days of trial, Dr. Klassen performed an additional surgery on Hennings because she had suffered an injury to her left knee several days before the first day of trial. After the conclusion of Hennings' case, Allstate moved to admit a video of a second deposition of Dr. Klassen, taken after that surgery. Hennings objected, arguing that it was irrelevant as she was not making a claim for the second surgery. The trial court denied Allstate's motion.

In her closing, Hennings asked the jury "to hold Allstate accountable." (Tr. 129). She suggested that her painful, daily headaches would support an award of $25—30 per day, which based upon her life expectancy of about 50 years, would total $45,-000-$54,000. She further cited the pain, suffering, and permanency of her knee injury, and suggested that an award of $1,000-$1,200 yearly, over her life expectancy, for $50,000-$60,000 would be appropriate. Hennings suggested that her less serious lower back injury warranted an award of $5,000, and she reminded the jury that she was still awaiting her $500 deductible.

Allstate argued that Hennings should not be given "a windfall," that she had "to prove that [Flores] was in fact uninsured at the time," that she should be found 10% at fault, that the jury should remember that Hennings had knee problems before the accident and was extremely active physically, that her constant headaches could be the result of her high stress job of teaching middle school, and that Dr. Klassen was unable to predict that Hennings would need a knee replacement. (Tr. 136). Allstate further argued that there was "a question about whether Mr. Flores was actually uninsured," and suggested that an award of $25,000 would be "more than reasonable." (Tr. 141, 142).

The jury returned a verdict finding Flores 100% at fault and finding Hennings' damages to be $115,000. The trial court entered judgment against Flores and Allstate in that amount. Allstate then filed a motion to correct error, asking the trial court to reduce the judgment to $100,000 because that was the limit of Hennings' policy as to uninsured motorist coverage, or to reduce the judgment based on the evidence, or to grant a new trial. The trial court denied Allstate's motion, finding that sufficient evidence supported the verdict and that the $115,000 "judgment was not excessive." (App.12). The trial court further held that there was "sufficient evidence that [Allstate] breached its duty of good faith and fair dealing to its insured by ignoring [Hennings'] claim that ... Flores was uninsured at the time of the collision...." *Id.*

## DECISION

### 1. *Amount of Damages Award*

The trial court denied Allstate's motion to correct error, which had argued that the

---

8. This certified record was also admitted into evidence.

jury's damages award should be reduced either because it exceeded the policy limits or because the award was excessive based upon the evidence. We agree with its first assertion: that the trial erred in denying its motion because the jury's damages award required reduction to the extent it exceeded the policy limits of $100,000.

■■■ We reverse a trial court's denial of a motion to correct error only for an abuse of discretion. *Allstate Ins. Co. v. Hammond,* 759 N.E.2d 1162, 1165 (Ind.Ct. App.2001). There is such an abuse of discretion "if the trial court misinterprets the law." *Id.*

■■■ Punitive damages are not available in an action for breach of contract; only "where the conduct of the breaching party independently establishes the elements of a common law tort" may punitive damages be awarded—"for the tort." *Miller Brewing v. Best Beers,* 608 N.E.2d 975, 981 (Ind.1993). Indiana tort law includes the insurer's "duty to deal with its insured in good faith," an "obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation" which

> includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind.1993). However, an insured cannot claim "tort damages for the breach of the duty to exercise good faith" simply because "an insurance claim is erroneously denied"—"*even if* it is ultimately determined that the insurer breached its contract" in denying the claim. *Id.* at 520 (emphasis added). Accordingly, as a matter of law, punitive damages

may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing....

*Id.* at 520 (citation omitted).

Both Allstate and Hennings argue the case of *Allstate v. Hammond,* 759 N.E.2d 1162 (Ind.Ct.App.2001). Therein, Hammond sued her insurer, Allstate, after an accident in which her vehicle was struck by an uninsured motorist. The jury returned a verdict of $160,000 for Hammond. Because her policy limit for uninsured motorist coverage was $51,000, Allstate filed a motion to correct error asserting that it could not be held liable for any amount in excess of $51,000. The trial court denied Allstate's motion, and Allstate appealed. Our review of the facts noted that—unlike in this case—Allstate had "conceded it was liable in damages to Hammond, but ... dispute[d] the medical evidence as to the extent of her injuries and the amount of recovery to which she was entitled." *Id.* at 1165. However, we also found that Hammond's arguments to the jury never suggested that Allstate "breached its duty to Hammond of good faith and fair dealing" but rather referred to Allstate's "contractual obligation" for her damages based upon the contract of insurance between herself and Allstate. *Id.* at 1166. Finally, we noted that Hammond did not request punitive damages, and that according to the record, the trial did "not involve the issue of bad faith." *Id.* We discussed how the distinction between an action in tort and an action in contract affected the respective damages awards for these two kinds of actions. We then concluded that

> in a first-party action by an insured to collect uninsured motorist benefits from

his or her insurer, the amount of recoverable damages cannot exceed the limits provided for in the insurance policy in effect at the time of the accident, *in the absence of any claim or evidence that the insurer breached its duty of good faith and fair dealing to its insured.* *Id.* at 1167 (emphasis added). Finding that "no evidence of any bad faith or unfair dealing on the party of Allstate was introduced" at trial, we held that the trial court abused its discretion when it denied Allstate's motion to correct error and allowed to stand the jury's verdict "that imposed liability on Allstate in excess of the insurance motorist liability limits in Hammond's policy." *Id.* at 1167, 1168.

We begin by acknowledging that there may have been some evidence that Allstate's behavior in addressing Hennings' claim was less forthcoming and more equivocal than one would hope for in such circumstances. However, the law does not equate such behavior with tortious conduct.

■ In her legal action, Hennings did not plead bad faith by Allstate. Her complaint contains no such general allegation.[9] Nor does her complaint allege that Allstate had made "an unfounded refusal to pay policy proceeds," or "caused an unfounded delay in making payment," or "deceived" her, or "exercise[d] an unfair advantage to pressure [her] into a settlement," or "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Hickman,* 622 N.E.2d at 519, 520. Hennings' final argument asked that Allstate be held accountable—but the argument was framed with repeated references to her policy of

insurance, such as that it was paid for by "over a thousand dollars every six months for premiums," and asked that Allstate "be held accountable for that which they promised to do." (Tr. 130, 131). Because neither Hennings' complaint nor her arguments at trial pressed a claim of bad faith, the issue of tortious bad faith conduct was never presented to the jury. Further, the jury was not instructed concerning Allstate's duty of good faith and fair dealing.

Given the circumstances before it, the trial court abused its discretion when it failed to grant Allstate's motion to correct error. As a matter of law, Hennings' damages could not exceed the policy limits of $100,000. Therefore, we reverse the trial court's denial of Allstate's motion and remand for entry of an order reducing the award to Hennings to $100,000.

Allstate also argues that the trial court erred in denying its motion to correct error because the jury's verdict was excessive in light of the evidence introduced at trial. We address this argument only as it applies to the implicit contention that an award of $100,000 was excessive. With this contention, we must disagree.

■ To have granted Allstate's motion to correct error, the evidence of Hennings' damages would have to have been "insufficient to support the verdict as a matter of law." *Carbone v. Schwarte,* 629 N.E.2d 1259, 1261 (Ind.Ct.App.1994); *see also Childress v. Buckler,* 779 N.E.2d 546, 550 (Ind.Ct.App.2002). Thus, the verdict "must be upheld if the award determination falls within the bounds of the evidence." *Childress,* 779 at 550. A jury's award may be reversed "only . . . when it is apparent from a review of the evidence

---

**9.** Allstate failed to provide the complaint in its appendix, but Hennings included the com- plaint in hers.

that the amount of the damages awarded by the jury is so small or so great as to clearly indicate that the jury was motivated by prejudice, passion, partiality, corruption or that it considered an improper element." *Id.* (citation omitted). Moreover, the jury is afforded a great deal of discretion in assessing damage awards. *Sears Roebuck v. Manuilov,* 742 N.E.2d 453, 462 (Ind.2001).

 One injured by the negligence of another is entitled to "reasonable compensation," which "means such sum as would reasonably compensate the victim both for bodily injuries and for pain and suffering." *Ritter v. Stanton,* 745 N.E.2d 828, 843 (Ind.Ct.App.2001), *trans. denied, cert. denied* 536 U.S. 904, 122 S.Ct. 2357, 153 L.Ed.2d 179 (2002). "To that sum is added past, present, and future expenses reasonably necessary to the plaintiff's treatment...." *Id.*

 There was no evidence to indicate that any of Hennings' medical bills were unreasonable or that any of her medical treatments were inappropriate. The evidence showed that Hennings' activities had been significantly curtailed as a result of the accident. According to her testimony, this constituted a diminished quality of life for her. Further, the evidence reflected Hennings suffered a permanent impairment in the use of her left leg. In addition, 3½ years after the accident, Hennings continued to experience significant headache pain on a daily basis. Hennings' medical treatment also was on-going at the time of trial, and the evidence supports the reasonable inference that she will require additional medical treatment in the future for her injuries. In addition to future treatment, Hennings will suffer the impair-

ing effect of the accident throughout her lifetime—nearly fifty more years, according to the evidence. This evidence, and the reasonable inferences therefrom, support the damages award as found by the jury. Therefore, the trial court did not abuse its discretion when it denied Allstate's motion to correct error on the grounds that an award of $100,000 was excessive.

### 2. *Jury Instruction*

Allstate also argues that the trial court erred when it "failed to instruct the jury that [it] could only award up to the limits of Hennings['] uninsured motorists policy limits." Allstate's Br. at 11. We agree.

 When addressing a challenge to a trial court's decision to refuse a tendered instruction, we consider "whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions." *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893 (Ind. 2002). "The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion." *Id.*[10]

Allstate's tendered instruction read as follows:

The limits of liability under the uninsured motorists provisions of Plaintiff's policy of insurance with The Allstate Insurance Company are One Hundred Thousand Dollars ($100,000.00). Any award of monetary damages entered in favor of the Plaintiff and against the

---

10. When an instruction is challenged as an incorrect statement of the law, our review is *de novo. Id.* at 893–94. However, Allstate does not argue that any instruction given was an incorrect statement of the law.

Defendant, Allstate Insurance Company, cannot exceed the policy limits.

(Allstate's App. 14).

Hennings does not claim that the tendered instruction was an incorrect statement or the law, or that it was covered in substance by other instructions. Rather, she appears to argue that the instruction was not supported by the evidence in that "it did not include the exception for cases involving a claim or evidence of bad faith." Hennings' Br. at 7. Because we have held that Hennings failed to press such a claim, her argument fails. The instruction tendered by Allstate was a correct statement of the law, it was supported by the evidence at trial, and it was not covered by any other instructions. Therefore, the trial court abused its discretion when it failed to instruct the jury as requested by Allstate.

3. *Exclusion of Evidence*

Finally, Allstate argues that the trial court erred when it refused to admit the second deposition of Dr. Klassen. In this regard, we disagree.

The decision whether to admit or exclude evidence lies within the sound discretion of the trial court and is afforded great deference on appeal. *Strack and Van Til, Inc. v. Carter*, 803 N.E.2d 666, 670 (Ind.Ct.App.2004). We will not reverse that decision absent a showing of manifest abuse of that discretion. *Id.*

According to Allstate's appellate argument, the second deposition's testimony by Dr. Klassen about the condition of Hennings' knee after the second surgery that was performed between the two days of trial would have "added new information and clarified statements he made in his first deposition" about the affects of the October 2000 accident on Hennings' knee. Allstate's Br. at 20. However, this was not the argument made to the trial court.

There, Allstate argued that the second deposition should be heard because of its discussion of "total knee replacement surgery" for Hennings in the future. (Tr. 127). Hennings responded that the matter was extensively discussed in the deposition already heard by the jury and that she did not intend to argue extensively for consideration of a possible knee replacement as part of her damages. The trial court stated, "The doctor did testify about the knee replacement and that she would likely need the knee replacement had she not had this most recent accident" and denied Allstate's motion to admit the deposition. (Tr. 128).

As noted in FACTS, Allstate elicited significant discussion by Dr. Klassen about the relationship between the October 2000 accident and the likelihood of Hennings' future need for a knee replacement. Further, consistent with her statement to the trial court when discussing Allstate's motion to admit the second deposition, Hennings did not argue to the jury that it should award an amount to include a future knee replacement. Moreover, Hennings' final argument suggested possible sums to properly compensate her for the damages resulting from the accident and that could reasonably be awarded based upon the evidence before the jury. The award was within this range.

Allstate's appellate argument would require that we find the trial court abused its discretion for not considering a basis for admitting the second deposition that was not asserted by Allstate. Based upon Allstate's argument to the trial court about why it should admit Dr. Klassen's second deposition, we find no manifest abuse of discretion by the trial court in excluding it.

*CONCLUSION*

We affirm in part, reverse in part, and remand for entry of judgment in the amount of $100,000.

BARNES, J., concurs.

MAY, J., concurs in result.