**ALLSTATE INSURANCE COMPANY, Appellant–Defendant,**

v.

**Sharon L. HAMMOND, Appellee–Plaintiff.**

No. 49A02–0103–CV–164.

Court of Appeals of Indiana.

Dec. 27, 2001.

John W. Hammel, Yarling & Robinson, Indianapolis, IN, Attorney for Appellant.

Mark C. Ladendorf, Daniel A. Ladendorf, Gloria J. Gradeless, Ladendorf & Ladendorf, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Allstate Insurance Company appeals the trial court's denial of its motion to correct error after a jury returned a verdict in favor of its insured, Sharon K. Hammond, in her action to recover uninsured motorist benefits. We reverse and remand.

### Issues

Allstate asks us to consider two issues, which we restate as:

I. whether the trial court should have granted its motion to correct error, which sought to reduce the jury's $160,000 judgment against it to $51,000, the stipulated amount of uninsured motorist and medical ex-

penses coverage under Hammond's policy; and

II. whether the trial court erred by instructing the jury that it was to assess damages against Allstate without regard to the policy limits.

## Facts

On May 23, 1998, an uninsured motorist rear-ended Hammond's car while she was stopped an intersection. Allstate and its insured Hammond were evidently unable to come to an agreement as to the extent of the injuries she suffered in the accident.[1] On August 13, 1999, Hammond sued Allstate, alleging she was its insured at the time of the accident, that the other motorist was uninsured, and that Allstate was "responsible under said insurance contract for the damages set forth herein." Appendix p. 11. The uninsured motorist was not a party to this lawsuit, and there is no indication Hammond has ever sued him directly. It was stipulated that Hammond's policy with Allstate provided uninsured motorist coverage of $50,000, plus $1,000 in medical expenses coverage.

The case was tried to a jury on January 23 and 24, 2001. Hammond presented evidence concerning the nature and extent of her injuries and the extent to which her ability to work had been impaired. Allstate conceded it was liable in damages to Hammond, but it did dispute the medical evidence as to the extent of her injuries and the amount of recovery to which she was entitled. After closing arguments, the trial court gave the following instruction to the jury over Allstate's objection:

You are instructed that the policy of insurance between Sharon Hammond and Allstate Insurance Company provided uninsured motorist benefits with a policy limit of $51,000. In assessing damages for the injury suffered by Sharon Hammond, you are to fairly value that injury based on these instructions without regard to the policy limits that were in effect at the time of this collision.

Transcript p. 363. The jury returned a verdict for Hammond of $160,000, and the trial court entered judgment in that amount. Allstate filed its motion to correct error on February 12, 2001, asserting it could not be held liable for any amount in excess of the policy limits, $51,000. The trial court denied the motion, and this appeal ensued.

## Analysis[2]

### I. Denial of Motion to Correct Error

We will reverse a trial court's denial of a motion to correct error only for an abuse of discretion. *See Medlock v. Blackwell,* 724 N.E.2d 1135, 1137 (Ind.Ct. App.2000). An abuse of discretion occurs if the trial court's action is against the logic and effect of facts and circumstances before the court and the inferences that may be drawn therefrom. *Id.* An abuse of discretion also occurs if the trial court misinterprets the law. *Halsey v. Smeltzer,* 722 N.E.2d 871, 872 (Ind.Ct.App.2000), *trans. denied.* Allstate argues that the trial court misinterpreted the law, and thus abused its discretion, when it denied the motion to correct error.

1. Hammond claims Allstate offered $20,000 to settle her claim. However, Hammond first asserted this in her response to Allstate's motion to correct error. We see no evidence in the trial transcript to support this assertion, nor any evidence at all regarding settlement negotiations between Allstate and Hammond.

2. Hammond requested oral argument in this case. Finding the issues to be sufficiently argued in the briefs, we now deny that request.

The principal case relied on by Allstate is *Town & Country Mut. Ins. Co. v. Hunter*, 472 N.E.2d 1265 (Ind.Ct.App.1985), *trans. denied.* There, we stated that an insurer providing uninsured motorist coverage is liable to its insured for damages caused by the uninsured motorist, but only up to the limits provided for in the insurance policy. *Id.* at 1270. Hammond argues inter alia that this statement was dictum. Even if we agree with that assertion, however, we conclude that the statement accurately reflects the general law in Indiana and controls the outcome of this case.

 We begin by observing that this case was never tried as a tort action alleging Allstate breached its duty to Hammond of good faith and fair dealing. The complaint made no mention of that type of breach. Counsel for Hammond never suggested such a breach in their opening and closing arguments, instead stating "[t]he action is based upon a contract.... Uninsured motorist coverage is meant to put the injured party in the same position as if the person who injured her had insurance." Transcript p. 22. "It's a contractual obligation on the part of Allstate to pay damages in this case that were proximately caused by this accident." Transcript p. 323. The evidence at trial focused entirely on the nature and extent of Hammond's injuries and the extent of her ability to work. Hammond neither requested punitive damages against Allstate nor sought to recover attorney fees. The jury was not instructed on the requirements of a bad faith/unfair dealing claim against an

insurer, as outlined in *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515 (Ind. 1993), and other cases. Finally, Hammond cites no authority to support her assertion that the mere fact the jury returned a verdict in excess of the policy limits is "prima facie evidence of bad faith." Appellant's Brief p. 7. We must conclude, therefore, that Hammond's action was effectively one alleging breach of contract by Allstate in failing to pay uninsured motorist benefits. Hammond's attempts to distinguish *Hunter* on the basis that it did not involve the issue of bad faith are thus unavailing, because the case before us today likewise does not involve the issue of bad faith.[3] Insurance companies may dispute claims in good faith, and a finding that an insurer breached its contract in denying a claim is insufficient by itself to support a bad faith claim. *Erie*, 622 N.E.2d at 520. We also note Hammond's occasional use of the phrase "tortious breach of contract" in her brief in describing her action against Allstate; "Indiana, however, does not recognize a separate cause of action for tortious breach of contract." *Broadhurst v. Moenning*, 633 N.E.2d 326, 334 (Ind.Ct.App.1994). We then analyze this case by applying traditional contract principles of law.

"In tort, all damages directly traceable to the wrong and arising without an intervening agency are recoverable." *Erie*, 622 N.E.2d at 519. "By contrast, the measure of damages in a contract action is limited to those actually suffered as a result of the breach *which are reasonably assumed to have been within the contemplation of the*

---

**3.** It is also inappropriate for Hammond to now argue Allstate's bad faith in this appeal, given the evidence presented at trial and more specifically the complete *lack* of evidence that Allstate failed "to evaluate the case in a timely and good faith fashion," that it has a "pattern and practice of trying [uninsured motorist] cases," that it acted "wilfully and

maliciously" in not settling Hammond's claim, and the lack of any evidence regarding settlement negotiations in this case. Appellee's Brief pp. 10, 13, 14. We cannot consider matters outside of the record on appeal. *Capehart v. Capehart*, 705 N.E.2d 533, 539 (Ind.Ct.App.1999), *trans. denied.*

*parties at the time the contract was formed." Id.* (Emphasis added.) A plaintiff seeking damages for breach of contract is not entitled to be placed in a better position than she would have been had the breach not occurred. *Holloway v. Bob Evans Farms, Inc.,* 695 N.E.2d 991, 995 (Ind.Ct.App.1998). The plaintiff may recover the benefit of her bargain but is limited in her recovery to the loss actually suffered, and a damage award must be referenced to some fairly defined standard. *Fowler v. Campbell,* 612 N.E.2d 596, 603 (Ind.Ct.App.1993).

■ Taking these principles into consideration, we hold that in a first-party action by an insured to collect uninsured motorist benefits from his or her insurer, the amount of recoverable damages cannot exceed the limits provided for in the insurance policy in effect at the time of the accident, in the absence of any claim or evidence that the insurer breached its duty of good faith and fair dealing to its insured. The benefit of Hammond's bargain with Allstate was this: Allstate charged and Hammond paid premiums for her automobile insurance policy with the clear and reasonable expectation that if she was injured by an uninsured motorist, Allstate would pay up to $50,000 of any damages she may have suffered, plus $1,000 in medical expenses. Although automobile insurance policies may have certain features of a contract of adhesion, in that the insurer generally is significantly more sophisticated than the insured, we assume Hammond was free to contract with Allstate to be entitled to a higher amount of uninsured motorist coverage, if she was willing to pay the additional premium necessary to obtain such coverage. Having chosen not to do so, she cannot now seek to effectively increase the policy limits via a lawsuit in which no evidence of any bad faith or unfair dealing on the part of Allstate was

introduced, and which was consistently pled and tried as an action on the contract of insurance. Otherwise, Hammond would improperly be placed in a better position than she would have been if no breach had occurred.

■ Hammond raises several other challenges to Allstate's reliance on the uninsured motorist coverage limits in the policy, none of which we find persuasive. First, she contends that Allstate acted in bad faith in this litigation because of its use of in-house counsel to defend this action, claiming this violated Indiana Rule of Professional Conduct 1.7 and its prohibition against representing two adverse clients; she essentially claims Allstate's in-house counsel violated this rule because he represented both Allstate and Hammond. We note Hammond never requested that the trial court disqualify Allstate's counsel for this alleged violation of the Rules of Professional Conduct, which is a power within the trial court's jurisdiction. *See Cincinnati Ins. Co. v. Wills,* 717 N.E.2d 151, 154 (Ind.1999). In fact, we see no indication that Hammond ever questioned the propriety of in-house counsel's representation of Allstate until she responded to the motion to correct error, which we conclude is too late to raise such a claim. *Cf. Noblesville Redev. Comm'n v. Noblesville Assoc. Ltd. P'ship,* 674 N.E.2d 558, 565 n. 7 (Ind.1996) ("A motion to correct error is not the appropriate place to assert a claim against a defendant for the first time.").

■ Second, Hammond claims that public policy prevents Allstate from relying on its policy limits in this case. She acknowledges that insurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law. *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1098 (Ind.1985). Hammond does not directly attack Allstate's uninsured motorist

policy limits, instead asserting that "[i]t is Allstate's claims-handling policy that is contrary to public policy." Appellant's Brief p. 14. This is not relevant to this case because of the lack of any evidence in the record on appeal regarding Allstate's claims-handling policies and procedures. Appellant's Brief p. 14.

 Next, Hammond claims that Allstate's policy is ambiguous and should be read as waiving the stated policy limits if the insurer and insured fail to settle a claim and the case is tried in a court. She points to the following two provisions in the policy: a section titled "If We Cannot Agree" states "[i]f the insured person and we do not agree to arbitrate, then the disagreement will be resolved in a court of competent jurisdiction." Appendix p. 110. Another section titled "Payment of Loss by Allstate" says that "[a]ny amount due is payable to the insured person...." *Id.* Hammond claims the failure of the policy to expressly refer to the uninsured motorist liability limits in these two sections means that Allstate may be held liable for any amount of damages a jury may choose to assess in a trial.

 The following guidelines apply when construing an insurance policy:

An unambiguous insurance policy must be enforced according to its terms, even those terms that limit an insurer's liability. An insurance contract will be deemed ambiguous only if reasonable people upon reading the contract would differ as to the meaning of its terms. Ambiguity is not established by the mere existence of a controversy or by the parties' differing interpretations of the contract terms.

We also note that an insurance contract must be construed as a whole. Construction of the contract as a whole requires reading beyond isolated phrases, and unclear terms can be clarified by reading the entire contract.

*Weidman v. Erie Ins. Group,* 745 N.E.2d 292, 297 (Ind.Ct.App.2001) (internal citations omitted). In essence, Hammond is asking us to read isolated phrases in the policy without reference to the contract as whole, most notably the provision in the uninsured motorist portion of the policy entitled "Limits of Liability" that refers to the liability limits shown on the policy declarations for uninsured motorists insurance. Appendix p. 108–09. We conclude there is no ambiguity in the policy, and reasonable persons would understand that the uninsured motorist policy limits would apply as a cap upon any recovery by an insured, regardless of whether the case was settled or·proceeded to trial.

 Hammond also claims that permitting Allstate to rely on its policy limits to limit her recovery violates her right to a jury trial under Article I, § 20 of the Indiana Constitution. She cites no authority for her proposition that the constitutional right to a jury trial prohibits limits on jury awards, regardless of whether the award falls within a legally acceptable range.[4] We conclude, therefore, that she has waived appellate review of this argument. *See Johnson v. State,* 693 N.E.2d 941, 954 (Ind.1998); *see also* Ind. Appellate Rule 46(A)(8)(a).

 Finally, Hammond asserts that "[o]f extreme importance to the background of this litigation is the fact that subsequent to this verdict Sharon Hammond filed a Complaint for Damages ...

---

4. If this were the case, the well-established procedure allowing for remittitur of an exces-

sive jury verdict would be unconstitutional.

that alleges negligence, bad faith and tortious breach of contract against Allstate in its handling, evaluation, claims practice and bad faith negotiations in this case." Appellee's Brief p. 7. We fail to see how a lawsuit filed after the completion of the trial below should be in any way relevant to our analysis and discussion today. We are not persuaded by Hammond's apparent assertion that it is impossible to bring a bad faith action against an insurance company without first obtaining a judgment against the insurer in excess of the policy limits in a *non-bad faith* action. Beginning with *Erie*, several reported appellate decisions have discussed the tort of an insurer's breach of its duty of good faith and fair dealing. Not one of them has suggested that an insured must or even should follow the course of action Hammond has chosen. In fact, our review of the cases reveals that plaintiffs have brought bad faith claims against insurers simultaneously with an action against an uninsured motorist and/or a breach of contract action against the insurer. *See, e.g., Erie*, 622 N.E.2d at 522 (insured filed four-count complaint, two against the uninsured motorist, one against the insurer for breach of contract, and one against the insurer for bad faith); *Gooch v. State Farm Mut. Auto. Ins. Co.*, 712 N.E.2d 38, 39 (Ind.Ct.App.1999), *trans. denied* (insured sued insurer for breach of contract and later amended complaint to add bad faith claim); *Becker v. American Family Ins. Group*, 697 N.E.2d 106, 107 (Ind.Ct. App.1998) (insured sued uninsured motorist and sued insurer for bad faith; trial court bifurcated proceedings to consider uninsured motorist's liability and extent of damages before considering bad faith claim). Hammond has not indicated to us why it was not possible to prosecute her action against Allstate in a similar fashion if she believed bad faith and unfair dealing existed in this case.

We conclude the trial court misinterpreted the law when it denied Allstate's motion to correct error. It thus abused its discretion in permitting a jury verdict to stand that exceeded the permissible amount of recoverable damages in this case the limits of Allstate's uninsured motorist liability as provided in Hammond's policy in the absence of any trial evidence or argument that Allstate acted in bad faith.

## II. Jury Instruction

■■■■ Allstate claims the trial court erred by instructing the jury, over Allstate's objection, that it could assess damages in this case irrespective of the uninsured motorist policy limits; indeed, this was essentially the basis of its motion to correct error. When determining whether error resulted from the giving of an instruction, we apply the following three-prong test: 1) whether the tendered instruction correctly states the law; 2) whether there is evidence in the record to support giving the instruction; and 3) whether the substance of the instruction is covered by other instructions that are given. *King v. Clark*, 709 N.E.2d 1043, 1046 (Ind.Ct.App.1999), *trans. denied*. A jury instruction that misstates the law will serve as grounds for reversal unless the court on appeal finds that the error was harmless. *Liberty Mut. Ins. Co. v. Blakesley*, 568 N.E.2d 1052, 1058 (Ind.Ct. App.1991). It is assumed that an erroneous instruction influenced the jury's verdict unless it appears from the evidence that the verdict could not have differed even with a proper instruction. *Miller v. Ryan*, 706 N.E.2d 244, 250 (Ind.Ct.App. 1999), *trans. denied*.

■■■■ We have now held that in a first-party action by an insured to collect uninsured motorist benefits from his or her insurer, the amount of recoverable dam-

ages cannot exceed the limits provided for in the insurance policy in effect at the time of the accident, in the absence of any claim or evidence that the insurer breached its duty of good faith and fair dealing to its insured. It is a misstatement of the law, in a breach of contract case brought by an insured seeking to recover uninsured motorist benefits, to instruct the jury that it may assess damages against the insurer without reference to the policy limits.[5] It is also clear that the giving of this instruction prejudiced Allstate, as a proper instruction on the permissible amount of damages would surely have resulted in a verdict not exceeding the stipulated policy limit of $51,000.

### Conclusion

The trial court abused its discretion by denying Allstate's motion to correct error and permitting a jury verdict to stand that imposed liability on Allstate in excess of the uninsured motorist liability limits in Hammond's policy, because the case was consistently pled and tried as a breach of contract action. Furthermore, the trial court erroneously instructed the jury as to the amount of permissible damages. We reverse and remand with instructions to reduce the judgment against Allstate to $51,000.

Reversed and remanded.

SULLIVAN, J., and RILEY, J., concur.

---

5. Whether a jury could have been given the instruction in question in a bad faith/unfair dealing case is a question we do not decide today. Our supreme court has expressly declined to delineate the extent of damages an insured could seek from his or her insured in a bad faith tort action; it is unclear, however, that such damages would differ from the policy limits in the absence of a claim for punitive damages. "[I]n most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action." *Erie,* 622 N.E.2d at 519.