## FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**RODNEY L. SCOTT**
**TRICIA KIRKBY HOFMANN**
**CHAD M. SMITH**
Waters, Tyler, Hofmann & Scott, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE:

**ROGER L. PARDIECK**
**KAREN M. DAVIS**
The Pardieck Law Firm
Seymour, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 36A05-1212-CT-635 |
| | ) | |
| KIMBERLY S. EARL and THE ESTATE OF JERRY EARL, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE JACKSON CIRCUIT COURT
The Honorable William E. Vance, Judge
Cause No. 36C01-1008-CT-13

**January 24, 2014**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

In this case, we are presented with an issue of first impression in Indiana. More particularly, appellant-defendant State Farm Mutual Automobile Insurance Company (State Farm) asks us to join other states that have determined Uninsured Motorist (UM) insurance limits to be inadmissible. Here, a jury returned a verdict of $250,000 for appellees-plaintiffs Kimberly Earl and the Estate of Jerry Earl (collectively, "the Earls") after Jerry was injured in a motorcycle accident through no fault of his own. State Farm argues that the trial court erred when it allowed into evidence at a jury trial the $250,000 bodily injury limit provision contained in the Earls' insurance policy. State Farm contends that evidence of the bodily injury limit was both irrelevant and prejudicial. Determining that evidence of the bodily injury limit was in fact both irrelevant and prejudicial, we reverse and remand this cause to the trial court for further proceedings consistent with this opinion.

## FACTS

On September 3, 2008, Jerry was driving his motorcycle on southbound Interstate 65 in Jackson County. Jerry was in the inside lane with one semi tractor-trailer in front of him and another in the right lane beside him. When the semi in front of Jerry pulled into the right lane, the semi to his right moved into his lane, forcing him to swerve to the left to avoid impact. Jerry lost control of the motorcycle, which flipped, and he was thrown into the grassy median. The driver of the semi, possibly unaware of what had transpired, did not stop, and was never identified. Both parties stipulate that Jerry was forced to swerve to avoid impact and was not responsible for the accident.

2

Jerry sustained extensive injuries including fourteen rib fractures in ten of the ribs on his left side, a broken left scapula and clavicle, a lacerated liver, a pulmonary contusion, abrasions on his legs, and a blood clot in his leg. He was taken to Schneck Medical Center in Seymour, then to Methodist Hospital in Indianapolis, where he received treatment from a trauma team. After being hospitalized for two days, he was released and allowed to recuperate at home. Jerry did breathing exercises for his lung condition and, in December 2008, attended physical therapy classes. When he was told that his insurance would no longer cover the physical therapy, he did his exercises at home.

After the accident, Jerry could no longer interact with his family in the way he had before. Kimberly, his wife, testified that, after the accident, sleeping in bed was too painful for Jerry, and he slept in a recliner. She stated that "he was … passionate and of course that changed, and that was always important to him." Tr. p. 234. Kimberly stated that Jerry had been a "prankster" before the accident, and that the pain he was in after the accident kept him from laughing and joking like he had before. In addition, Jerry was no longer able to enjoy many of the activities he engaged in before the accident, such as gardening and basketball. His son testified that his left shoulder drooped, and that there was "a very obvious sag" when Jerry stood. Id. at 166.

Jerry was the co-owner of Brooks and Earl Construction, and he was never able to return to work in his full capacity. Due to the pain, Jerry could no longer operate the equipment or lay pipe as he had before the accident. He attempted to do work at home

3

on a laptop, but due to his pain, he had difficulty with his workload. Glen Brooks, his partner, testified that the business suffered, and that it "took its toll on [Jerry]." Tr. p. 203. Jerry dealt with pain from the accident until he passed away from cancer, an illness unrelated to the crash, on January 4, 2012.

Before Jerry died, he and Kimberly brought suit against State Farm, seeking UM coverage benefits under their automobile insurance policy. At the time of the accident, Jerry and Kimberly had a personal auto policy with State Farm that provided for UM insurance coverage with a limit of $250,000 per person. The policy also included an umbrella policy providing additional UM coverage in the amount of $2,000,000.[1] Kimberly was not present at, or involved in, the motorcycle accident, but filed a claim for loss of consortium. However, she is also personal representative for Jerry's estate, which was substituted as plaintiff for Jerry after his death.

Before the trial began, State Farm filed a motion in limine, asking the trial court to exclude any evidence about the amount of UM coverage available to the Earls, arguing that the limit was irrelevant and prejudicial. The trial court denied the motion. At trial, State Farm's counsel objected to a reference to the insurance policy in the Earls' counsel's opening statement, and again objected when the contract was offered into evidence. It is unclear, but there may have been an issue with the recording of the objection colloquy, and so the trial court directed that the record reflect that State Farm timely objected to the introduction of the UM insurance limit.

---

[1] No evidence of the $2,000,000 umbrella policy was introduced at trial.

After hearing all the evidence, the jury returned a verdict for the Earls in the sum of $250,000, the coverage limit. Of this award, $175,000 was allocated to the Estate of Jerry Earl, and $75,000 to Kimberly. State Farm had previously advanced $20,000 to the Earls before the trial, and the judgment was reduced to $230,000 to reflect that sum.

State Farm now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

We review a trial court's admission of evidence for an abuse of discretion. Weinberger v. Gill, 983 N.E.2d 1158, 1163 (Ind. Ct. App. 2013). The trial court abuses its discretion only when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. Id. "A trial court's decision to admit or exclude evidence will not be reversed unless prejudicial error is clearly shown." Morse v. Davis, 965 N.E.2d 148, 155 (Ind. Ct. App. 2012), trans. denied. To determine whether reversal is required, the court considers the probable impact of the evidence upon the jury. Gibson v. Bojrab, 950 N.E.2d 347, 352-52 (Ind. Ct. App. 2011). The appellant bears the burden of showing reversible error, as all presumptions are in favor of the trial court's judgment. Id. at 352.

### II. Admission of Evidence

At the outset, although the record clearly indicates that State Farm timely objected to the introduction of the bodily injury limit for UM coverage in the Earls' policy,

Kimberly Earl asserts that State Farm waived its objection when it failed to elaborate upon its objections that the evidence was irrelevant and prejudicial. While Kimberly is correct that these objections would be insufficient to preserve the issues for appellate review without any explanation of why the evidence is prejudicial or irrelevant, that does not seem to be the case here. When State Farm objected during opening statements, the court reporter may have failed to record the discussion that occurred when State Farm's counsel approached the bench, and the trial court, realizing that the recording equipment had malfunctioned, made a record of the objection, noting that State Farm objected to the evidence as irrelevant. Tr. p. 95; 12-20. Accordingly, we decline to find that State Farm waived its objections.

Proceeding to the merits, State Farm asks us to align our law with states that have determined that evidence of a UM insurance limit is inadmissible.[2] In some circumstances, evidence of UM insurance limits is clearly relevant. For example, if the existence of the policy is challenged or if the amount of the coverage limit or a coverage issues is a jury question in the case. However, here, the sole issue for the jury to determine in the case was the amount of damages caused to the Earls by the uninsured motorist. Under the Indiana Evidence Rules, "'[r]elevant' evidence means evidence having any tendency to make the existence of any fact that is <u>of consequence to the</u>

---

[2] See <u>Auto-Owners Ins. Co. v. Dewberry</u>, 383 So.2d 1109 (Fla. Dist. Ct. App. 1980) (holding that, when insured's counsel repeatedly mentioned UM policy limits and the jury awarded the policy limit, there was reversible error); <u>Kvamme v. State Farm Mut. Auto, Ins.</u>, 677 N.E.2d 122 (Neb. 2004) (determining that reversible error existed when the trial court allowed evidence of the UM policy limit into evidence, even though the jury only awarded the insured half of the coverage limit).

determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. (emphasis added). In this case, when the only issue to be determined was damages, evidence of the bodily injury limit in the Earls' policy was irrelevant to the issue being decided.

State Farm also argues that it was prejudiced by the introduction of the bodily injury limit in the Earls' insurance policy. Here, the jury was presented with evidence that the coverage limit for bodily injury was $250,000. The jury awarded exactly $250,000 in damages to the Earls. The extent of Jerry's injuries was hotly contested at trial, and it is certainly possible that, considering all of the evidence concerning Jerry's lowered quality of life and Kimberly's loss of his companionship, that the jury believed that the Earls were entitled to the coverage limit or more in damages. However, in light of the fact that the jury awarded precisely the coverage limit, we cannot say that the jury was unaffected by the evidence of the coverage limit. Therefore, we find that the trial court erred when it allowed the introduction of evidence concerning the bodily injury limit in the Earl's insurance policy.

The judgment of the trial court is reversed and this cause is remanded for a new trial.

VAIDIK, C.J., concurs, and RILEY, J., dissents with opinion.

7

# IN THE
# COURT OF APPEALS OF INDIANA

STATE FARM MUTUAL AUTOMOBILE   )
INSURANCE COMPANY,   )
   )
   Appellant-Defendant,   )
   )
   vs.   )   No. 36A05-1212-CT-635
   )
KIMBERLY S. EARL and   )
THE ESTATE OF JERRY EARL,   )
   )
   Appellee-Plaintiffs.   )

**RILEY, Judge, dissenting**

I respectfully disagree with the majority's decision to reverse the jury verdict and remand for a new trial. As an issue of first impression, State Farm disputes the admissibility at trial of the bodily injury limit for UM coverage in the Earls' policy. Specifically, relying on a relevancy argument, State Farm asserts that the UM coverage limits should be excluded because the amount of coverage is irrelevant to the issue of damages that is being decided. I disagree.

While State Farm is correct that no Indiana case has decided this issue on point, case law exists where a policy's UM limits were presented to the jury for consideration in

8

its verdict. Most prevalently, Indiana courts have allowed the introduction of UM limits in the area of jury instructions. In 2003, we noted in *Malott v. State Farm Mutual Insurance Company*, 798 N.E.2d 924, 925 (Ind. Ct. App. 2003), that "[a]t State Farm's request and over Malott's objections, the trial court instructed the jury that Malott had to prove that State Farm breached its contract with Malott, resulting in damages to her, and that it could not award damages against State Farm in excess of the UM policy limit of $100,000." Reviewing the jury instruction, we noted that

> [I]n the present case the jury was required to first assess the damages Malott suffered in the accident in accordance with tort law principles, and then it was required to compare this amount with the amount State Farm has actually paid and determine, under contract law principles, whether State Farm breached its contractual obligation to pay UM benefits.

*Id*. at 925-26. As such, we concluded that the jury instruction was a correct statement of the law and relevant to the issues that needed to be decided. *Id*. at 927.

Similarly, in *Allstate Insurance Company v. Hammond*, 759 N.E.2d 1162, 1165 (Ind. Ct. App. 2001), Hammond sought UM benefits in a contract action against Allstate. Over Allstate's objection, the trial court instructed the jury on the UM coverage limits and informed the jury that it could set the value of Hammond's injury "without regard to the policy limits that were in effect at the time of this collision." *Id*. at 1165. The jury returned a verdict in excess of the UM limit. *Id*. Distinguishing tort actions from actions in contract, this court noted that "the measure of damages in a contract action is limited to those actually suffered as a result of the breach which are reasonably assumed to have

9

been within the contemplation of the parties at the time the contract was formed." *Id*. at 1166-67. Therefore, "[t]he plaintiff may recover the benefit of the bargain but is limited in her recovery to the loss actually suffered, and a damage award must be referenced to some fairly defined standard." *Id*. at 1167. However, because we concluded it was error to instruct the jury that it may assess damages "without reference to the policy limits", we reversed the verdict. *Id*. Thus, although not stated explicitly, it is clear that the limits of the UM coverage are relevant to the issue of damages.

Here, the admissibility of the UM coverage limits was contested by Farm Bureau through a motion in limine and timely objections at trial. The trial court rejected Farm Bureau's arguments and instructed the jury on the UM limits and the elements to consider in determining the damage amount. In light of *Malott* and *Hammond*, I conclude that the trial court did not abuse its discretion when it admitted evidence of the Earls' UM coverage limits.

Moreover, I cannot say that the admissibility of the coverage limits was prejudicial. State Farm asserts, and the majority agrees, that the amount of the verdict—which was exactly the maximum under the UM coverage—suggests that the jury was influenced by the evidence of the coverage limit. However, the majority disregards the substantial amount of evidence reflecting Jerry's extreme pain in the weeks after the wreck and the physical pain, mental suffering, and limitations he continued to suffer because of his injuries until his death. Prejudicial error is not established merely because the jury awarded the UM policy limit; rather, the more appropriate inference is that the

10

jury followed the trial court's instructions and, in light of the overwhelming evidence, arrived at the policy limit.  I would affirm the trial court.