ATTORNEYS FOR APPELLANT
Rodney L. Scott
Tricia Kirkby Hofmann
New Albany, Indiana

Chad M. Smith
Greensburg, Indiana

ATTORNEYS FOR APPELLEES
Roger L. Pardieck
Karen M. Davis
Seymour, Indiana



FILED
Jun 09 2015, 10:38 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 36S05-1408-CT-562

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

*Appellant (Defendant below),*

v.

KIMBERLY S. EARL AND THE ESTATE OF
JERRY EARL,

*Appellees (Plaintiffs below).*

Appeal from the Jackson County Circuit Court, No. 36C01-1008-CT-13
The Honorable William E. Vance, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 36A05-1212-CT-635

**June 9, 2015**

**Massa, Justice.**

After Jerry Earl sustained severe injuries in a motorcycle accident, he and his wife sued State Farm to recover under the uninsured motorist provision included in their policy. We are asked to decide whether the trial court abused its discretion in admitting evidence of their $250,000 coverage limit. Finding it did not, we affirm.

**Facts and Procedural History**

Jerry was an active man who enjoyed hunting, fishing, and building things. He made a living as a co-owner of a small construction business, using his years of experience in custom excavating and sewer work. In addition to spending his free time with his wife Kimberly and his grandkids, Jerry played in a men's basketball league.

Jerry's life changed dramatically on September 3, 2008. While riding his motorcycle south on I-65 in Scottsburg, a tractor-trailer entered Jerry's lane, forcing him to swerve out of the truck's way and into the median. Jerry was thrown from his bike at 65 miles per hour, resulting in extensive injuries. He sustained a fractured collarbone, a fractured shoulder blade, and fractures in all ten ribs on his left side, some of them crushed into fragments. He also suffered a pulmonary contusion, collapse of his left lung, laceration of his liver, skin abrasions, and a blood clot in his left leg. Jerry was transported to Indianapolis for treatment, which required "a multi-disciplinary trauma team." Tr. at 107. According to his family physician, "many people don't survive" what Jerry survived. Tr. at 108. Despite the seriousness of the accident, the driver of the tractor-trailer did not stop and was never identified.

After the accident, the road to recovery was long. Jerry spent two days in the hospital, he had several follow-up visits with his orthopedic surgeon who prescribed heavy pain medications, he continued seeing his family physician in Seymour about his injuries, and he went to five physical therapy sessions, continuing with the exercises at home. It took weeks for Jerry's ribs to heal, and the trauma permanently changed the anatomy of his shoulder joint so that one shoulder drooped lower than the other.

Eventually, in January, Jerry got back to the office to do light work, mostly paperwork, and he got back into a bulldozer in April or May. Still, he could not do excavation work, and he never returned to work full-time. According to Jerry's business partner, the business suffered as a result of Jerry's injuries. Other everyday tasks—whether moving animal feed, driving a car,

playing with his grandkids, and even sleeping—were difficult and painful for Jerry. Kimberly reported this pain affected their relationship.

Jerry had a policy with State Farm, which provided uninsured motorist coverage up to $250,000 per person and $500,000 per accident. He made a claim under the policy, and when State Farm refused to pay out the full amount, he sued. Jerry alleged State Farm was "liable under the terms and conditions of the contract for insurance." App. at 22. Kimberly also brought a claim for loss of consortium.[1] While the case was pending, Jerry died of an unrelated illness; Kimberly became the personal representative of his estate and was substituted for him as a plaintiff.

State Farm admitted liability, so the case proceeded to a jury only on the question of damages. Before trial, State Farm moved to exclude any evidence of the coverage limit on the grounds it was irrelevant to damages. The trial court denied that motion. During trial, State Farm's counsel objected both times the limit was mentioned, once during opening statements and once when the insurance contract was offered into evidence. Ultimately, the jury returned a verdict of $175,000 to Jerry's estate and $75,000 to Kimberly, for a total judgment of $250,000—the exact amount of the coverage limit.[2]

State Farm appealed, arguing the trial court abused its discretion by allowing the $250,000 coverage limit into evidence, and that error unfairly prejudiced State Farm's substantial rights. In a published opinion, a divided panel of our Court of Appeals reversed and remanded. State Farm

---

[1] Although the policy was issued to Jerry alone, Kimberly's claim was covered by the policy and subject to its limits. See Ex. 16 (stating "the Limit shown under 'Each Person' is the most we will pay for all damages resulting from bodily injury to any one person in any one accident, including all damages sustained by other persons as a result of that bodily injury" (emphasis omitted)); Medley v. Frey, 660 N.E.2d 1079, 1081 (Ind. Ct. App. 1996) (subjecting wife's loss of consortium claim to same per person injury coverage limit in tortfeasor's auto insurance policy after her husband was injured in an accident).

[2] Unbeknownst to the Earls until after the jury trial, they were also covered by a separate umbrella policy that carried an endorsement for uninsured motorist coverage with a limit of $2 million. Kimberly moved to correct error, requesting the verdict be increased and she be awarded attorneys' fees and expenses because "if the jury had known about the umbrella, it may have rendered a larger verdict." App. at 96. But before the trial court could rule on her motion, Kimberly withdrew it, saying she felt "the appropriate action to take in these unusual circumstances is to pursue other remedies" against State Farm. App. at 314. We need not address the umbrella policy, however, as our analysis is limited to the narrow question presented before us: whether the trial court abused its discretion in admitting the $250,000 coverage limit.

Mut. Auto. Ins. Co. v. Earl, 3 N.E.3d 1009, 1012 (Ind. Ct. App. 2014).  Judge Baker, writing for the majority, reasoned the coverage limit was irrelevant and therefore inadmissible because neither the existence of the policy nor the amount of coverage was at issue; the only question before the jury was the amount of damages.  Id.  And he determined, although "it is certainly possible that, considering all of the evidence concerning Jerry's lowered quality of life and Kimberly's loss of his companionship, that the jury believed that the Earls were entitled to the coverage limit or more," reversal was necessary because "[the majority] cannot say that the jury was unaffected by the evidence of the coverage limit."  Id.

Judge Riley dissented, concluding the trial court did not abuse its discretion in admitting the coverage limit in light of two Indiana cases allowing juries to be instructed on such limits where—like here—the insured alleges the insurer breached the terms of their insurance contract. Id. at 1013 (Riley, J., dissenting) (citing Malott v. State Farm Mut. Auto. Ins. Co., 798 N.E.2d 924 (Ind. Ct. App. 2003) and Allstate Ins. Co. v. Hammond, 759 N.E.2d 1162 (Ind. Ct. App. 2001)). And, in any event, Judge Riley found State Farm failed to show prejudice given the substantial evidence of Jerry's injuries.  Id. at 1013–14.

We granted the Earls' petition to transfer, thereby vacating the opinion below.  State Farm Mut. Auto. Ins. Co. v. Earl, 15 N.E.3d 588 (Ind. 2014) (table); Ind. Appellate Rule 58(A).

**Standard of Review**

We trust issues of admissibility to the sound discretion of our trial judges, and we review their evidentiary rulings for an abuse of discretion.  TRW Vehicle Safety Sys., Inc. v. Moore, 936 N.E.2d 201, 218 (Ind. 2010) ("A trial court's evidentiary rulings are presumptively correct."). Such an abuse occurs where the trial court's decision is against the logic and effect of the facts and circumstances before it.  Santelli v. Rahmatullah, 993 N.E.2d 167, 175 (Ind. 2013), reh'g denied. Even if we find inadmissible evidence was improperly placed before the jury, however, we only

4

reverse if that error was clearly prejudicial. Morse v. Davis, 965 N.E.2d 148, 155 (Ind. Ct. App. 2012), trans. denied, 978 N.E.2d 416 (Ind. 2012).

## The Trial Court Was Within Its Discretion in Admitting the Coverage Limit.

State Farm, along with amici the Defense Trial Counsel of Indiana and the Insurance Institute of Indiana, ask this Court to adopt a bright-line rule: coverage limits are irrelevant to the determination of tortious damages and are therefore inadmissible. The Earls, along with amicus the Indiana Trial Lawyers Association, ask for the opposite bright-line rule: coverage limits are relevant to the underlying contract claim and therefore "must" be admitted. Pet. Trans. at 5. We decline either side's invitation to take such a rigid approach; instead, we think it more appropriate to rely on our trial courts to exercise their discretion in determining what evidence is probative in the particular case before them. And, on these facts, we find the court was within that discretion.

We note at the outset, it is well settled that evidence of liability insurance is not admissible to show fault, although it may be admitted for other purposes. Ind. Evidence Rule 411.[3] The rationale behind this general rule is two-fold. First, insurance is not logically related to fault. 1 Kenneth S. Broun et al., McCormick on Evidence § 201, at 1120 (7th ed. 2013) ("[I]nsurance coverage reveals little about the likelihood that one will act carelessly."). Second—whether justified or not[4]—we worry the presence or absence of insurance may prejudice the jury. Spaulding v. Harris, 914 N.E.2d 820, 830 (Ind. Ct. App. 2009) ("The primary concern is that jurors will award excessive damages if they know an insurance company will be satisfying the judgment, or nominal damages if they learn the defendant will be paying out of his own pocket."). Both sides agree Rule 411 itself is not applicable in the case before us today. They are, of course, correct:

---

[3] "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Ind. Evidence Rule 411.

[4] "Today, compulsory insurance laws for motorists are ubiquitous . . . . Most jurors probably assume that defendants are insured." McCormick on Evidence § 201, at 1127. Indeed, in Indiana, drivers must maintain proof of financial responsibility. Ind. Code § 9-25-4-3 (2008). Moreover, the empirical effect of insurance on juries is unclear. Neil Vidmar, The Performance of the American Civil Jury: An Empirical Perspective, 40 Ariz. L. Rev. 849, 888 (1998).

liability here was not contested, and State Farm was properly named as defendant so the jury was well aware the damages would be paid by an insurance company rather than an individual. See Brown-Day v. Allstate Ins. Co., 915 N.E.2d 548, 552–53 (Ind. Ct. App. 2009) (holding Rule 411 does not preclude evidence of insurance where the insurance company is the real party in interest). We do, however, find the rationale behind Rule 411 instructive in considering the admissibility of coverage limits, albeit under our traditional balancing test.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evidence Rule 401. This often includes facts that merely fill in helpful background information for the jury, even though they may only be tangentially related to the issues presented. See, e.g., McFarland v. State, 271 Ind. 105, 111, 390 N.E.2d 989, 993 (1979). Irrelevant evidence is not admissible. Ind. Evidence Rule 402.

To determine whether evidence concerns a material fact, or a "fact of consequence," we look to the nature of the case and the issues being litigated, which are usually set out in the pleadings. McCormick on Evidence § 185, at 994; see also Simmons v. State, 717 N.E.2d 635, 638 (Ind. Ct. App. 1999) ("The admissibility of evidence is predicated upon its relationship to an issue in the case[.]"). Suits to recover pursuant to uninsured or underinsured motorist provisions have been recognized as involving issues of both contract law and tort law. Malott v. State Farm Mut. Auto. Ins. Co., 798 N.E.2d 924, 926 (Ind. Ct. App. 2003). The underlying cause of action is based on the contractual relationship between the insured and the insurer, although the parties may principally litigate the measure of damages relying upon tort principles. Id.; Brown-Day, 915 N.E.2d at 552 ("The cause of action to be tried before the jury is a first party claim for contract enforcement against [insurer], seeking underinsured motorist benefits."); Allstate Ins. Co. v. Hammond, 759 N.E.2d 1162, 1166 (Ind. Ct. App. 2001) (finding even though the trial focused entirely on the nature and extent of the plaintiff's damages, the "action was effectively one alleging breach of contract by [insurer] in failing to pay uninsured motorist benefits").

Here, the Earls presented an underlying breach of contract claim in their complaint, alleging, "in consideration of the premiums stated therein, [State Farm] issued an insurance policy" that "was in full force and effect on [the day of the accident]," and State Farm was "liable under the terms and conditions of the contract for insurance." App. at 21–22. And the case was tried as such. In his opening statement, the Earls' lawyer described the suit as "a dispute over a contract between the Earls and State Farm." Tr. at 81. The court even preliminarily instructed the jury, "Plaintiffs are making a claim under their policy of insurance with the Defendant." App. at 57; Tr. at 74. After all the evidence was presented, it further instructed:

> Jerry and Kimberly Earl have made a claim for damages based on the terms of the insurance contract issued to them by the defendant. . . . The terms of that coverage control the amount of recovery, if any, to which the claimers are entitled. According to that contract, two questions must be answered:
>
> > 1. Is the plaintiff legally entitled to recover from the unidentified motorist; and
> >
> > 2. If so, what amount are the Plaintiffs entitled to recover from State Farm Automobile Insurance Company as a result of the accident in question.

App. at 69; Tr. at 296–97. Given these circumstances, we cannot say the trial court erred in determining the insurance policy—and the coverage limit contained within it—was relevant background information that would help the jury understand the relationship between the Earls and State Farm and the basis for the lawsuit itself.

Our finding the coverage limit relevant—even if only barely so—is consistent with opinions of our Court of Appeals, which have held, in a suit for uninsured motorist coverage, the jury may be informed about the limit through an instruction. Allstate Ins. Co. v. Hennings, 827 N.E.2d 1244, 1252–53 (Ind. Ct. App. 2005); Malott, 798 N.E.2d at 926–27; Hammond, 759 N.E.2d at 1166–67. State Farm argues these cases are distinguishable because they deal with instructions, not admissibility. But they necessarily shed some light on the question of relevance: a proper instruction must not only be a correct statement of the law not covered by another instruction, it must also be supported by the evidence and be "*relevant* to the issues the jury must decide."

Malott, 798 N.E.2d at 926 (emphasis added); see also Reed v. State, 141 Ind. 116, 40 N.E. 525, 526 (1895) ("[I]t is settled by the decisions of this [C]ourt that instructions should be relevant to the issues in each particular case, and applicable to the facts and evidence therein.").[5]

All relevant evidence, of course, must still pass muster under Indiana Evidence Rule 403: it is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 411 provides us with some insight into unfair prejudice concerning evidence of insurance: just as possessing insurance is not probative of fault, the coverage limit is not probative of the actual damages suffered by Jerry and Kimberly, and we are sympathetic to litigants' concerns that a jury may improperly rely on that coverage limit as a frame of reference. We balance that risk of prejudice here with the value of the coverage limit as background information.

State Farm argues the jury's award of the exact value of the coverage limit is conclusive evidence that its admission amounted to substantial unfair prejudice.[6] We disagree and instead align ourselves with Judge Riley on this issue: "The more appropriate inference is that the jury followed the trial court's instructions and, in light of the overwhelming evidence, arrived at the policy limit." 3 N.E.3d at 1014. The jury heard extensive evidence of Jerry's injuries, suffering, and lasting limitations. And, it was properly instructed on the factors it may consider in quantifying the damages to Kimberly and Jerry's estate:

> If you decide from the greater weight of the evidence that State Farm
> Mutual Automobile Insurance Company is liable to Jerry and

---

[5] In Malott, it was State Farm who requested the jury be instructed on the insured's $100,000 policy limit, ultimately prevailing on appeal. 798 N.E.2d at 925. Here, State Farm seems to take the opposite position, arguing the Earls' $250,000 coverage limit never should have gone to the jury; yet, in doing so, it says Malott, Hammond, and Hennings should remain good law. Oral Arg. Video at 5:50–6:10. Such a result would allow insurers to object to the admission of a high limit it doesn't want the jury to hear but request an instruction where it behooves the insurer to emphasize a low limit to the jury. The introduction of policy limits—whether in evidence or instructions—cannot depend on the insurance company's litigation strategy.

[6] State Farm also cites the affidavit of one of the jurors, which was attached to Kimberly's motion to correct error concerning the $2 million umbrella, as evidence the jury considered the limit. But this does not amount to unfair prejudice; instead, it indicates the jury treated the coverage limit as what it is, a cap to what it could legally award: "The jurors and I wondered if we were allowed to award both Kimberly Earl and The Estate of Jerry Earl the maximum amount allowed by limits, $250,000.00, or if both claims together could only total $250,000.00." App. at 191. Because this larger limit was never admitted and is not at issue on appeal, we need not decide whether its prejudicial effect would outweigh its probative value.

8

Kimberly Earl, then you must decide the amount of money that will fairly compensate Jerry and Kimberly Earl.

In deciding the amount of money you award, you may consider:

(1) the nature and extent of the injuries, and the effect of the injuries on Jerry Earl's ability to function as a whole person;

(2) the physical pain and mental suffering Jerry and Kimberly Earl ha[ve] experienced as a result of the injuries;

(3) the reasonable value of necessary medical care, treatment, and services plaintiff incurred as a result of the injuries; [and]

(4) the aggravation of a previous injury, disease or condition.

App. at 68; Tr. at 295–96; see also Malott, 798 N.E.2d at 927 (concluding a nearly identical instruction adequately advised the jury on the calculation of damages in accordance with tort principles). The jury was also instructed not to base the award "on sympathy, bias, or prejudice." App. at 75; Tr. at 300.[7] Given the substantial evidence and the correct instructions, we find no error.

We understand State Farm's concerns about a coverage limit's potentially harmful influence on the calculation of actual damages. Accordingly, our decision today does not stand for the proposition that coverage limits are always admissible. We can foresee instances where the insured's injury is so minor and the coverage limit so large it gives rise to a legitimate concern that the jury will inflate its award, a concern that would be heightened if, for example, plaintiff's counsel repeatedly emphasized the limit despite its relatively low probative value. In this case, however, we do not have such a concern,[8] and we conclude the trial court did not abuse its discretion in admitting the evidence.

---

[7] We note State Farm could have requested additional cautionary instructions that the coverage limit only serves to limit the award and that the plaintiffs are entitled only to an amount that will reasonably and fairly compensate them for the damages sustained from the accident. Hennings, 827 N.E.2d at 1252–53 (finding trial court erred by refusing to instruct jury its award could not exceed policy limit where there was no claim of bad faith).

[8] Our Court of Appeals has previously upheld such a damages award for injuries of this type and degree. See Bob Schwartz Ford, Inc. v. Dunham, 631 N.E.2d 953, 956–57 (Ind. Ct. App. 1994) (finding evidence sufficient to support total damages award of $250,000 in driver's action against automobile dealership, where accident left driver with permanent leg length discrepancy and persistent pain, driver was no longer able to engage in activities such as dancing

## Conclusion

Although the probative value of the Earls' $250,000 coverage limit with State Farm is admittedly low, we cannot say the trial court abused its discretion in finding that probative value was not outweighed by substantial prejudice. On these facts, we find no error in its admission. We affirm.

Rush, C.J., and Dickson, Rucker, and David, JJ., concur.

---

and shopping with her family, and, although driver returned to work within one year of accident, she was usually exhausted by the end of the day).