## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2015, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

David M. Payne
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Wanetta Marie Lloyd,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 31, 2015

Court of Appeals Case No.
27A02-1503-CR-161

Appeal from the Grant Superior Court

The Honorable Dana J. Kenworthy, Judge

Trial Court Cause No.
27D02-1404-FA-3

**Crone, Judge.**

# Case Summary

[1] Wanetta Marie Lloyd appeals her thirty-five-year sentence for class A felony neglect of a dependent resulting in death. She asserts that she was denied due process when the trial court admitted certain medical testimony from her co-defendant's trial and that the trial court abused its discretion in its treatment of aggravators and mitigators. Finding that she waived review of her due process argument and otherwise invited any error concerning the medical testimony and finding that the trial court acted within its discretion in its treatment of aggravators and mitigators, we affirm.

# Facts and Procedural History

[2] At around 1:00 a.m. on February 13, 2013, Lloyd got off work and went to her home that she shared with Donald Riddle. She and Riddle had an agreement that he would watch her three young children and take care of the house in exchange for his living with her. Both Lloyd and Riddle used marijuana and morphine. The two were involved in drug dealing and had conducted transactions in front of the children.

[3] Shortly after Lloyd returned from work, she left and went to her boyfriend's house. She returned in the early morning hours and went to bed until early afternoon. Thereafter, she ran errands, ordered pizza, and returned home at dinner time. She ate pizza with Riddle and her two older children, and then took morphine and smoked marijuana with Riddle. She took a shower and planned to take her older daughter out for some late evening shopping. Around

9:45 p.m., she went into the room of her youngest child, two-year-old A.C., who had been ill and vomiting during the previous days. She found A.C. dead on her bedroom floor and called 911.

[4] When investigators arrived, they found A.C. cold to the touch and determined that she had been dead for quite some time. A.C.'s head, neck, back, torso, abdomen, and arms were covered with second- and third-degree burns. She had bruises on her head, face, legs, foot, and ankle. An autopsy showed that A.C. died as a result of the burns, which were determined to have been deliberately inflicted. White, unburned areas around her eyes and certain parts of her neck indicated that she might have attempted to squint and cover herself when the burns were being inflicted. The attending pathologist concluded that immediate treatment might have proved life-saving. Lloyd admitted to police that she had not checked on A.C. between the time she came home from work (1:00 a.m.) and the time she found A.C. dead (9:45 p.m.). Police found marijuana, plastic bags, and a digital scale in the home. They also recovered text messages referencing the purchase and sale of illegal substances.

[5] Lloyd and Riddle were charged as co-defendants. Riddle's case proceeded to trial. Lloyd pled guilty to class A felony neglect of a dependent resulting in death, class D felony maintaining a common nuisance, and class D felony marijuana dealing. At her sentencing hearing, the State submitted transcripts of testimony from the pathologist who performed A.C.'s autopsy and a pediatric burn specialist, both of whom had testified at Riddle's trial. The same trial judge presided over Riddle's trial and Lloyd's sentencing. Lloyd affirmatively

agreed to the admission of the transcripts. The trial court sentenced Lloyd to thirty-five years for class A felony neglect of a dependent causing death, with twenty-five years executed and ten years suspended to supervised probation. The court sentenced her to two years for each of the class D felony convictions, both to run concurrent to her sentence for the class A felony. Lloyd now appeals her sentence for class A felony neglect of a dependent. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – Lloyd waived review of her due process argument and invited any error that occurred.

[6] Lloyd asserts that the trial court violated her due process rights during the sentencing hearing by admitting transcripts of medical testimony from Riddle's trial. She bases her argument on that fact that the admitted transcripts were not subject to cross-examination by her counsel. However, she did not object when the transcripts were offered for admission during the sentencing hearing. Thus, she has waived review of this issue. *Robey v. State*, 7 N.E.3d 371, 379 (Ind. Ct. App.), *trans. denied*. To the extent that she argues that the alleged error amounted to fundamental error, we note that she not only failed to object but also affirmatively agreed to the admission of the doctors' testimony. As such, she invited any error that may have occurred. The invited error doctrine forbids a party to take advantage of an error that she "commits, invites, or which is the natural consequence of her own neglect or misconduct." *Brewington v. State*, 7 N.E.3d 946, 974-75 (Ind. 2014), *cert. denied* (2015); *Wright v. State*, 828 N.E.2d

904, 907 (Ind. 2005). "[E]rror invited by the complaining party is not reversible error." *Booher v. State*, 773 N.E.2d 814, 822 (Ind. 2002) (citation omitted). "Even constitutional errors may be invited." *Barnett v. State*, 24 N.E.3d 1013, 1017 (Ind. Ct. App. 2015) (citation omitted). In short, Lloyd affirmatively agreed to the admission of the transcripts and now complains that she was deprived of her constitutional right to cross-examine the witnesses whose testimony was included in them. As such, she invited the alleged error and cannot obtain reversal on this basis.

## Section 2 – The trial court did not abuse its discretion in its treatment of aggravating and mitigating factors.

[7] Lloyd also maintains that the trial court abused its discretion in its treatment of certain aggravators and mitigators. Sentencing decisions rest within the sound discretion of the trial court, and as long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Sloan v. State*, 16 N.E.3d 1018, 1026 (Ind. Ct. App. 2014). The trial court sentenced Lloyd to a thirty-five-year term for her class A felony conviction, which carries a sentencing range of twenty to fifty years. Ind. Code § 35-50-2-4 (2013). Because her sentence is within the statutory range, we review it for an abuse of discretion.

[8]     Indiana Code Section 35-38-1-7.1 lists matters that may be considered as aggravating and mitigating circumstances by the trial court in sentencing. Subsection (c) emphasizes that the list of statutory factors is not exhaustive, and subsection (d) allows the trial court to impose any sentence that is authorized by statute and permissible under the Indiana Constitution. Here, the trial court found the aggravators to be Lloyd's history of juvenile delinquency; the victim's young age, complete dependency, and extreme vulnerability; the level of harm, injury, and damage to the victim; and the presence of Lloyd's children during drug transactions. The court assigned as mitigators Lloyd's relatively law-abiding life (except for drug use); her expressions of remorse; her acceptance of responsibility as evidenced by her guilty plea; her likelihood of probation success; and the potential undue hardship of her imprisonment on her remaining children. The sentencing order contains extensive reasons for the trial court's assignment of the various aggravators and mitigators. With respect to each of the factors cited, the court indicated whether it found the factor to be "extremely strong," "strong," "moderate," or "weak." Appellant's App. at 33-34.

[9]     Lloyd's arguments focus mainly on the weight the trial court assigned to certain factors. We remind her that the relative weight or value assignable to mitigators and aggravators is not subject to review for abuse of discretion. *Anglemyer*, 868 N.E.2d at 491-92. For example, she cites the trial court's use of her juvenile record as an aggravator and her relatively law-abiding adult life as a mitigators and posits that these factors should have merely offset. She also

takes umbrage with the trial court's designation of the harm, injury, loss or damage suffered by the victim as an "extremely strong" aggravator. With respect to this factor, the trial court explained,

> The harm, injury, loss or damage suffered by A.C. was significant, and greater than the elements necessary to prove commission of the offense. In particular, the medical evidence presented during the jury trial of co-Defendant Donald Riddle indicated that A.C. suffered extreme pain for some hours prior to her death, due to her untreated burns, which covered a large part of her body. One aspect of this evidence provides insight into A.C.'s last day of life. The doctors who examined A.C.'s injuries explained why the areas around her eyes and her neck were not burned; the explanation indicated that A.C. squeezed her eyes closed and scrunched her shoulders upward in a self-protective stance. The medical evidence indicates that A.C. tried to save her own little life … but she was left to suffer, alone and without comfort, until she died. Defendant knew A.C. had been sick, including vomiting, for a couple of days prior to her death. Defendant came and went from the home several times in the 24 hours before A.C. was discovered deceased, yet she never checked on her child during this time. This is an *extremely strong* aggravating factor.

Appellant's App. at 34. (Emphasis in original.) Lloyd claims that this finding is emotional in tone and fails to account for her attempts to seek medical help once she discovered A.C.'s lifeless, burned body. However, the neglect charge was *not* based on Lloyd's failure to seek help after the fact. Rather, she was charged with (and pled guilty to) neglect based on her failure to check on her two-year-old child for more than twenty hours. In other words, Lloyd's comings and goings over the last day of A.C.'s fleeting life, especially when she

knew that A.C. had been ill and when she knew of Riddle's criminal activities, demonstrate her total lack of concern for her toddler's wellbeing and whereabouts. We find no abuse of discretion here.

[10] Lloyd also maintains that the trial court improperly designated an element of her offense as an aggravator. *See Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014) ("Where a trial court's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense, absent something unique about the circumstances that would justify deviating from the advisory sentence, that reason is 'improper as a matter of law.'"). Specifically, she challenges the trial court's use of the victim's young age as an inappropriate aggravator given that age is already an element of the offense of class A felony neglect of a dependent. The threshold age for a victim in such a case is "less than fourteen." Ind. Code § 35-46-1-4(b)(3). Here, the victim, only two years old, was far younger than the threshold age. In many neglect of a dependent cases, this Court has affirmed the trial court's use of a victim's tender age as an aggravating factor. *See, e.g.*, *Edwards v. State*, 842 N.E.2d 849, 855 (Ind. Ct. App. 2006) (fifteen-month-old victim); *Kile v. State*, 729 N.E.2d 211, 214 (Ind. Ct. App. 2000) (six-year-old victim); *Mallory v. State*, 563 N.E.2d 640, 647-48 (Ind. Ct. App. 1990) (six-year-old victim), *trans. denied* (1991).

[11] Although twenty hours might not be considered so protracted a period where the child is an adolescent or early teen, in this case, Lloyd failed to check on her sick two-year-old for twenty hours. Also, A.C.'s means for drawing her mother's attention were more limited, i.e., she likely lacked access to a cell

phone and thus could not call for help. The circumstances here are particularly grievous as medical personnel determined that A.C. had been dead for a while when discovered and that immediate treatment might have saved her life. The gruesome photographic exhibits show the lifeless, severely burned body of a very small child still in diapers. Simply put, A.C.'s tender age is a unique circumstance surrounding Lloyd's offense. Thus, even to the extent that the trial court considered an element of Lloyd's offense as an aggravator, it did not abuse its discretion.

[12] In sum, Lloyd's due process argument is not subject to review due to invited error. The trial court acted within its discretion in its treatment of aggravating and mitigating factors. Consequently, we affirm.[1]

[13] Affirmed.

May, J., and Bradford, J., concur.

---

[1] Lloyd argues that the trial court used her testimony from Riddle's jury trial against her in assessing her character during sentencing. She cites the trial court's statement in its sentencing order that she had testified at Riddle's jury trial "without immunity." Appellant's App. at 34. Even assuming that she had "use immunity" concerning her testimony at Riddle's trial, we disagree with her conclusion that the trial court used her previous testimony to disparage her character. In fact, the court found that her "character and attitudes indicate that she is unlikely to commit another crime[,] … has accepted responsibility[,] … willingly gave statements to police, [and] testified at [Riddle's] trial without immunity …. The Court believes her remorse to be genuine. This is a *strong* mitigating factor." *Id*. (Emphasis in original.) Thus, we find any error concerning her immunity status to have been harmless.